ALB:OG
F.# 2003R00452

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -                   03-CR-285 (RJD)

VINCENT DEMARTINO,

        Defendant.

– – – – – – – – – – – – – – – – – –X


THE GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO THE DEFENDANT'S MOTION FOR
<u>COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)</u>




                                   RICHARD P. DONOGHUE
                                   UNITED STATES ATTORNEY
                                   Eastern District of New York
                                   271 Cadman Plaza East
                                   Brooklyn, New York 11201




Oren Gleich
Assistant U.S. Attorney
    (Of Counsel)




I

## Table of Contents

Preliminary Statement..................................................................................................1

Factual Background ....................................................................................................1

    I.       The Defendant's Criminal History ................................................................1

    II.     COVID-19 and the Bureau of Prisons ........................................................4

Argument ....................................................................................................................5

    I.       The Defendant is Not Entitled to a Modification of his Sentence ............5

      A. Applicable Law ...............................................................................................6

         1.  Exhaustion Under 18 U.S.C. § 3582(c)(1)(A)(i)  .................................6

         2.  Criteria for Compassionate Release ....................................................10

      B. Analysis  ........................................................................................................11

         1.  The Defendant Has Not Exhausted His Administrative Remedies .......11

         2.  The Defendant is a Danger to the Community.......................................14

         3.  The Defendant's Medical Conditions Do Not Warrant Compassionate Release...16

         4.  The Section 3553(a) Factors Warrant Against Any Relief ...................20

Conclusion ................................................................................................................20

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this memorandum of law in response to defendant Vincent DeMartino's motion for a modification of an imposed term of imprisonment, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), filed on April 15, 2020 (the "Motion").   DeMartino seeks a reduction of more than four years due to the COVID-19 ("COVID-19" or "coronavirus") pandemic.  As set forth in further detail below, DeMartino has (1) failed to satisfy statutorily-mandated exhaustion requirements prior to seeking relief from this Court, and (2) has not met the heavy burden of establishing that his circumstances warrant compassionate release.  The Motion, therefore, should be denied.

<u>FACTUAL BACKGROUND</u>

I.   <u>The Defendant's Criminal History</u>

DeMartino is a "made member" of the Colombo Organized Crime Family of La Cosa Nostra (the "Colombo Family").  <u>See</u> <u>DeMartino v. United States</u>, No. 07-CV-1412 (NG), 2010 WL 3023896, at *1 (E.D.N.Y. Aug. 2, 2010).  On May 6, 2004, DeMartino was convicted by a jury verdict of violating 18 U.S.C. § 1959(a)(5) (conspiracy to commit murder in aid of racketeering), 18 U.S.C. § 1959(a)(3), (assault with a dangerous weapon in aid of racketeering) and 18 U.S.C. § 924(c)(1)(A)(iii) (discharge of a firearm).  Presentence Investigation Report ("PSR") ¶¶ 1-4.  On January 27, 2005, this Court sentenced DeMartino to 10 years' imprisonment on Count One, 15 years on Count Two to run concurrently to Count One and 10 years on Count Three to run consecutively to Counts One and Two. (Dkt. No. 170.)

The evidence at trial established that on July 16, 2001, Demartino and Giovanni Floridia, an "associate" of the Colombo Family, shot Joseph Campanella, a Colombo Family "soldier," for the purpose of maintaining or increasing their positions in the Columbo Family.  See DeMartino v. United States, No. 07-CV-1412 (NG), 2010 WL 3023896, at *1-*2 (E.D.N.Y. Aug. 2, 2010).  Specifically, on July 16, 2001, a minivan driven by Floridia approached Campanella as he was unlocking his own car.  DeMartino, who was seated in the minivan's passenger seat, fired four or five shots at Campanella with a handgun.  The minivan then sped away.  See id. at *2.  Campanella was wounded in the upper arm and foot but survived and testified for the government at trial.  Id.

The violent crime described above was not an isolated incident.  As reflected in the PSR, DeMartino has a long and violent criminal record dating back to 1978.  PSR ¶¶ 49-77.  For example, on March 12, 1984, DeMartino pled guilty to Criminal Mischief and was sentenced to serve one year in custody.  PSR ¶ 56.  In that case, DeMartino was involved in a stolen car ring with two other individuals.  PSR ¶ 56.  When one of the other two failed to pay a debt, DeMartino made several threatening phone calls, some of which involved death threats to the victim and his family.  PSR ¶ 56.  On June 16, 1983, DeMartino and a co-defendant traveled to the victim's home and, using baseball bats, broke every window in the home as well as the victim's vehicle.  PSR ¶ 56.  During the incident, one of the victim's children sustained facial lacerations from the broken glass.  PSR ¶ 56.

Following his release from jail, it did not take long for DeMartino to continue his violent criminal behavior.  On June 19, 1986, DeMartino was convicted of conspiring to commit bank robbery and possession of stolen property, in connection with a December 9, 1985 bank robbery at a Chase Manhattan Bank branch in Brooklyn.  PSR ¶ 57.  According to

the PSR, two men wearing ski masks and carrying handguns threw a rock through the plexiglass barrier between the automatic teller machine and lobby area.  PSR ¶ 58.  The men then entered the bank, ordered the employees to lie on the floor and stole approximately $275,000 in cash and checks from the night deposit room.  PSR ¶ 58.  Although DeMartino's 15-year sentence was imposed on June 19, 1986, DeMartino was paroled less than five years later on January 18, 1991.  PSR ¶ 57.

Once again, it did not take long for DeMartino to prove the danger that he poses to the community.  On December 16, 1991, less than one year after he was released from prison, police officers observed DeMartino driving in an erratic manner while talking into a handheld radio.  PSR ¶ 62.  He then parked behind another vehicle, belonging to a co-participant, Michael Spataro, who was with Gabrial Scianna.  As DeMartino exited his vehicle, he was approached by detectives and admitted to having a firearm in his waistband.  PSR ¶ 62.  Police recovered loaded 9 mm firearms from all three men, and a "hit list" from one of the men of names of various members of the Colombo Family who were designated for execution.  PSR ¶ 62.  DeMartino was subsequently convicted after a trial on May 12, 1993 for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and sentenced to 63 months' confinement.  PSR ¶ 63.

Proving that DeMartino simply cannot be trusted to follow Court orders, upon his release on November 17, 1997, DeMartino was discovered to have associated with a convicted felon and associate of the Colombo Family.  PSR ¶ 63.  He served a two-month period of incarceration ending on August 21, 1998, with a special condition that he participate in the Home Confinement Program for 5 months.  PSR ¶ 63.  DeMartino's term of supervised release was completed on January 27, 2001.  PSR ¶ 64.

3

DeMartino is currently incarcerated at Federal Correctional Institution ("FCI") Allenwood Low ("Allenwood"), a low security federal correctional institution.

II.   <u>COVID-19 and the Bureau of Prisons</u>

In response to the COVID-19 pandemic, the Bureau of Prisons (the "BOP") is currently implementing national measures to mitigate the spread of the virus within prisons. <u>See</u> Federal Bureau of Prisons resources page, <u>available at</u> <u>https://www.bop.gov/coronavirus/</u>; Federal Bureau of Prisons COVID-19 Action Plan, <u>available at</u> <u>https://www.bop.gov/resources/news/20200313_covid-19.jsp</u>. These measures, which have been implemented at Allenwood Low, include the following:

- <u>Suspension of all social and legal visits</u>:  Social visits and legal visits have been suspended for 30 days, with case-by-case accommodations for attorney visits and legal calls.  Inmates will be provided additional inmate telephone minutes each month.
- <u>Inmate movement</u>:  All inmate facility transfers have been suspended for 30 days, with exceptions permitted for forensic studies or medical or mental health treatment.
- <u>Screening and testing of inmates</u>:  All newly-arriving BOP inmates are screened for COVID-19 exposure risk factors and symptoms.  Inmates with exposure risk factors are quarantined.  In addition, inmates exhibiting flu-like symptoms are isolated (either to single rooms or with other patients) and tested for COVID-19 in accordance with local health authority protocols.
- <u>Modified Operations</u>: The BOP is implementing modified operations nationally to maximize social distancing and limit group gatherings in BOP facilities, among other modifications specific to each facility.

On March 26, 2020, the Attorney General directed the Director of the BOP, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement.  That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, <u>see</u> 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g).

Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits the BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."

Effective April 1, 2020, the BOP implemented additional procedures to ensure the safety and wellbeing of inmates, including efforts to significantly decrease incoming movement to all BOP facilities.

As of April 22, 2020, although United States Penitentiary Allenwood and FCI Allenwood Medium each had one staff member test positive for coronavirus, FCI Allenwood Low has reported that no inmates or staff have tested positive for coronavirus. See Federal Bureau of Prisons resources page, available at https://www.bop.gov/coronavirus.

<u>ARGUMENT</u>

I.     <u>The Defendant is Not Entitled to a Modification of his Sentence</u>

DeMartino seeks early release and a period of home confinement based on concerns relating to the coronavirus pandemic. The Motion lacks merit. As a threshold matter, DeMartino has failed to administratively exhaust his remedies within the BOP as required under 18 U.S.C. § 3582(c)(1)(A)(i). Moreover, DeMartino fails to establish that the circumstances outlined in the Motion justify compassionate release. Accordingly, DeMartino's Motion should be denied.

5

A.    Applicable Law

1.    Exhaustion Under 18 U.S.C. § 3582(c)(1)(A)(i)

The statute upon which DeMartino relies in support of the Motion, 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as the "compassionate release" statute, permits a Court to modify an already imposed sentence upon a showing of "extraordinary and compelling reasons."  See United States v. Zullo, 09-CR-64, 2019 WL 7562406, at *1 (D. Vt. Sept. 23, 2019).  A motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) may be made by either the BOP or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  Id.  Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.  Id.

Significantly, Section 3582(c)'s exhaustion requirement is statutory, and thus is not a judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions."  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016).  Indeed, statutory exhaustion requirements "stand[] on a different footing."  Id.  There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to."  Id.  Where, as here, a statute makes clear that a defendant must show that he has "fully exhausted all administrative rights," DeMartino cannot be excused from that obligation.  See Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.");  Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004) ("[A]s a general rule, courts are

6

required to strictly enforce statutory exhaustion requirements"); United States v. Gross, No.

15-CR-769 (AJN), 2020 WL 1862251, at *1 (S.D.N.Y. Apr. 14, 2020) ("Faced with

unambiguous statutory language requiring exhaustion of administrative remedies, we are not

free to rewrite the statutory text." (quoting Bastek v. Fed. Crop Ins. Corp., 145 F.3d 90, 94

(2d Cir. 1998)); cf. Fry v. Napoleon Community Schools, 137 S. Ct. 743, 750 (2017) (stating

that statute requiring that certain types of claims "shall be exhausted" is a mandatory

exhaustion provision for those types of claims).

      Consequently, a court lacks the authority to grant a defendant's compassionate

release motion absent exhaustion of the administrative remedies, as numerous courts,

including the only Court of Appeals to have addressed the issue, have held.[1]  See United

States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (holding that

"any remand" to the district court to consider a compassionate release motion "would be

futile" in light of the defendant's failure to exhaust, which "presents a glaring roadblock

foreclosing compassionate release"); United States v. Napout, No. 15-CR-252 (PKC), ECF

No. 1365 (E.D.N.Y. Apr. 14, 2020) ("exhaustion of administrative remedies, as set forth in

---

[1]    While the "Second Circuit has not yet answered the question of whether § 3582(c) is jurisdictional, several courts of appeals" have interpreted it thusly.  See, e.g., United States v. Monzon, No. 99-CR-157 (DLC), 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing cases); but see United States v. Taylor, 778 F.3d 667 (7th Cir. 2015) (holding that § 3582(c) is not jurisdictional)).  In any event, the exhaustion requirement of Section 3582(c)(1)(A), at a minimum, is a mandatory claim-processing rule and must be enforced if, as the government has done here, a party "properly raise[s]" it, Eberhart v. United States, 546 U.S. 12, 16 (2005) (per curiam) (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a non-jurisdictional, but mandatory claim-processing rule).  See also, e.g., Monzon, 2020 WL 550220, at *2 (noting that even if the exhaustion requirement is not jurisdictional, it is a "statutory exhaustion requirement" that must be "strictly enforced"); Gross, 2020 WL 1862251, at *4 (finding that the exhaustion requirement was not jurisdictional, but still mandatory as it constitutes a "claim-processing rule").

Section 3582(c)(1)(A), is at least a statutory requirement and [the defendant's] failure to

statisfy this requirement deprived the Court of the authority to grant him a sentencing

reduction under 3582(c)(1)(A)."); United States v. Flores, No. 15-CR-152 (RRM), ECF No.

47 (E.D.N.Y. April 12, 2020) (finding that the Court could not consider the motion of a

defendant that failed to satisfy the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A));

Gross, 2020 WL 1862251, at *2 (finding the exhaustion requirement mandatory but noting

disagreement among district courts); United States v. Roberts, No. 18-CR-528 (JMF), 2020

WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (noting that "[c]ourts do have some flexibility to

disregard exhaustion requirements when they are judicially imposed" but, "[a]s the Supreme

Court has emphasized . . . 'a statutory exhaustion provision stands on different footing'"

(quoting Ross, 136 S. Ct. at  1857); United States v. Hernandez, No. 19-CR-834 (PAE), 2020

WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020) (finding that the compassionate release

provisions of the FSA did not apply because "Mr. Hernandez does not appear to have sought

any such relief within the BOP, let alone exhausted his administrative remedies"); United

States v. Cohen, No. 18-CR-602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020)

("As the Government points out, he is 'manifestly ineligible' for compassionate release and

has not exhausted his administrative remedies."); United States v. Gileno, No. 19-CR-161

(VAB), 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020) ("As a threshold matter, Mr.

Gileno has not satisfied the requirement under 18 U.S.C. § 3582(c)(1)(A) to first request that

the Bureau of Prisons file a motion on his behalf and then show that thirty days have passed

without any BOP action. As a result, the Court cannot consider his motion to modify his

sentence."); Monzon, 2020 WL 550220, at *2 (noting that several Courts of Appeals have

held that § 3582(c)'s exhaustion requirement is a "jurisdictional bar" to review in the district

court, but declining to resolve the issue because even if it not jurisdictional, it is a "statutory

exhaustion requirement" that must be "strictly enforced," and the defendant failed to satisfy

that requirement); United States v. Bolino, No. 06-CR-806 (BMC), 2020 WL 32461, at *1

(E.D.N.Y. Jan. 2, 2020) ("The submission of a sufficient record to show exhaustion, at least

to the extent of the [BOP's] General Counsel's rejection of an appeal, is fundamental to this

Court's function in deciding a compassionate release motion.  Congress clearly wanted these

applications decided at the administrative level if possible.").[2]

        Finally, 18 U.S.C. § 3582(c)(1)(A) requires that a defendant "fully exhaust all

administrative remedies" within the BOP unless the warden of the inmate's institution fails

to act on the inmate's petition (i.e., there is a "lapse") within 30 days.  If the warden acts on

the inmate's request within 30 days, and denies the request, the inmate must then exhaust his

administrative remedies, including administrative appeal to the BOP, as set forth in 28 C.F.R.

§§ 542.10–19.[3]  Where a defendant has fully and properly exhausted his administrative

---

[2]     But see, e.g., United States v. Zuckerman, No. 16-CR-194 (AT), 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020) ("[T]he Court holds that Zukerman's exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in his unique circumstances—by the COVID-19 pandemic."); United States v. Perez, No. 17-CR- 513 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020) (finding that exceptions to the exhaustion requirement apply, emphasizing that the defendant's three week sentence would expire before the exhaustion period ends).

[3]     Several district courts across the country, including at least one in this district, have found that inmates must pursue administrative appeal prior to seeking relief in court.  See, e.g., United States v. Weidenhamer, No. 16-CR-1072 (PHX), 2019 WL 6050264, at *4 (D. Ariz. Nov. 8, 2019) ("In these circumstances, the Court concludes the better reading is to require administrative exhaustion if a warden acts on a request within 30 days. . . .  If the warden acts on that request in a timely matter, it is appropriate to require a defendant to pursue an administrative appeal.  That is consistent with the general preference that courts take advantage of agency expertise when possible."); United States v. Miller, No. 16-CR-269 (BLW), 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020) ("It seems odd that Congress would

rights, or the Warden has failed to take action on a defendant's request within 30 days, the

defendant may then bring a motion for compassionate release before a District Court.

### 2.    Criteria for Compassionate Release

The Guidelines and BOP policy have established clear criteria to aid in a

court's determination of when compassionate release is appropriate pursuant to 18 U.S.C.

§ 3582(c)(1)(A)(i).  See U.S.S.G. § 1B1.13; see also BOP Program Statement 5050.50

("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18

U.S.C. §§ 3582 and 4205(g)") (available at

---

allow a defendant to short-circuit the Bureau of Prison's administrative procedures simply by
waiting 30 days after filing his request, despite the warden timely acting on that request."
(citation omitted)); Bolino, 2020 WL 32461, at *1 (instructing that "[i]f the prison warden
denies that request [from the inmate], the prisoner must appeal the denial through the BOP's
Administrative Remedy Procedure"); United States v. Eisenberg, No. 16-CR-157 (LM), 2020
WL 1808844 (D.N.H. Apr. 9, 2020) ("[B]efore a district court may consider a compassionate
release motion filed directly by a defendant, the defendant must demonstrate that he has
either exhausted his administrative rights to appeal BOP's refusal to bring a motion for
compassionate release on his behalf or that BOP has ignored his request for compassionate
release for 30 days."); United States v. Korn, No. 11-CR-384S (WMS), 2020 WL 1808213,
at *2 (W.D.N.Y. Apr. 9, 2020) ("The exhaustion requirement is met if the defendant
establishes either (1) that the Bureau of Prisons denied his or her request that it bring a
compassionate-release motion and he or she fully exhausted all administrative appeal rights
with respect to that denial, or (2) that the warden of the facility took no action on his or her
request for the filing of a compassionate-release motion within 30 days of receiving it.");
United States v. Brummett, No. 07-CR-103-(DCR), 2020 WL 1492763, at *1 (E.D. Ky. Mar.
27, 2020) ("Because the warden explicitly denied his request, Brummett needed to exhaust
his administrative remedies to appeal the warden's denial before filing."); but see United
States v. Woodson, No. 18-CR-845 (PKC), 2020 WL 1673253, at *1 (S.D.N.Y. Apr. 6,
2020) (stating that "[i]f the BOP denies the defendant's application in fewer than 30 days,
then the defendant may immediately apply to the Court"); United States v. York, Nos. 11-
CR-76, 12-CR-145 (TWP), 2019 WL 3241166, at *6 (E.D. Tenn. July 18, 2019) (finding that
"[b]ecause 30 days have passed since [the defendant's requests to BOP], the Court has
authority to hear this matter under § 3582(c)(1)(A).").

https://www.bop.gov/policy/progstat/5050_050_EN.pdf).  Both the Guidelines and the BOP

Program Statement primarily limit compassionate relief to cases of serious illness or

impairment, advanced age or a need to care for a child, spouse or registered partner.  See id.;

see also United States v. Traynor, 04-CR-0582 (NGG), 2009 WL 368927, at *1 n.2

(E.D.N.Y. Feb. 13, 2009).  As the Court recognized in Traynor, Congress noted that Section

3582(c)(1) "applies . . . to the unusual case in which the defendant's circumstances are so

changed, such as by terminal illness, that it would be inequitable to continue the confinement

of the prisoner."  Id. at *1 (citing Senate Report No. 98–225, 98th Cong., 2d Sess., reprinted

in 1984 U.S.C.C.A.N. 3182, 3304).

    B.   Analysis

        1.   The Defendant Has Not Exhausted His Administrative Remedies

Prior to seeking relief from this Court, DeMartino must exhaust his

administrative remedies with the BOP.  Such exhaustion is a mandatory component of the

First Step Act ("FSA") statutory framework.  As a threshold matter, DeMartino has not

sought compassionate release from the BOP, let alone exhaust his administrative remedies.[4]

Accordingly his motion is not ripe for review and should be denied.

---

[4]     On page 4 of his Motion, DeMartino admits that he has not yet fully exhausted his
administrative remedies.  The government agrees but challenges the use of the term "fully."
DeMartino has not requested compassionate release from the BOP at all.  On page 3 of his
Motion, DeMartino suggests that a prior application for early release be liberally construed
as a claim for compassionate release under Section 3582(c)(1)(A).  The government rejects
such an analysis.  The prior application, a copy of which was attached as Exhibit D to
DeMartino's Motion, clearly shows that it was for the elderly home confinement pilot
program, which was established pursuant to Section 603(a) of the FSA.  Based upon
information received from the BOP, the application was received on December 6, 2019 and
the BOP determined that DeMartino was not eligible for that program.  DeMartino appealed
that determination to the Office of the General Counsel ("OGC").  On March 13, 2020, the

DeMartino cites Washington v. Barr, 925 F.3d 109 (2d Cir. 2019) for the

proposition that there may be exceptions to the FSA exhaustion requirement, despite its

statutory basis.  Barr, however, is inapposite in that it involved the invocation of a judge-

made exhaustion doctrine.  See id. at 116 (stating that the statute in question "does not

mandate exhaustion of administrative remedies" but finding that exhaustion requirement was

nevertheless appropriate); id. at 118 ("Although not mandated by Congress, [exhaustion] is

consistent with congressional intent.").  Accordingly, the court in Barr could consider judge-

made exceptions to the doctrine.  See Ross, 136 S. Ct. at 1857.  This proceeding, on the

other hand, is governed by a mandatory, statutory exhaustion requirement, and it would,

therefore, be legal error for the Court to disregard that requirement in the context of the

FSA.[5]  See Barr, 925 F.3d at 118.

---

OGC rejected the appeal because DeMartino failed to provide necessary documentation.  The
OGC instructed DeMartino to resubmit the appeal in its proper form within 15 days.
DeMartino has not done so.  Therefore, as of date of this filing, DeMartino is not pending
any decision related to his request for entry into the elderly home confinement pilot program.
Furthermore, as stated above, DeMartino has not made a request within BOP for
compassionate release and no administrative actions are pending on that basis either.

[5]     While Barr states that the exhaustion requirement is not absolute when mandated "by
statute or decisional law," Barr, 925 F.3d at 118 (emphasis added) (quoting McCarthy v.
Madigan, 503 U.S. 140, 146 (1992)), the court in that case appears to have disregarded the
critical distinction between statutory and judge-made exhaustion requirements articulated by
the Supreme Court in Ross.  See, e.g., United States v. Woodson, No. 18-CR-845 (PKC),
2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020) (noting that the reference in Barr that
statutory exhaustion requirements are not absolute was both dicta and incorrect); but see
United States v. Sawicz, No. 08-CR-287 (ARR) (E.D.N.Y. Apr. 10, 2020).  Barr's reliance,
moreover, on the Supreme Court's decision in McCarthy v. Madigan, which clearly
distinguishes between judicial exhaustion requirements and those mandated by statute,
further undermines this position.  See McCarthy, 503 U.S. at 152 ("Because Congress has
not required exhaustion of a federal prisoner's Bivens claim, we turn to an evaluation of the
individual and institutional interests at stake in this case." (emphasis in original)).

Moreover, there is good reason to reject DeMartino's request that the Court ignore the statutorily-imposed 30-day window required before considering a compassionate release application.  Most significantly, the 30-day period provides the BOP with the ability to develop a record upon which it—and subsequently the district court—can make a determination about the inmate's request for release.  Bolino, 2020 WL 32461, at *1 (upholding the exhaustion requirement and noting that it is "particularly important to at least give the BOP an opportunity to state its reason for denying the application so that the court can review those reasons"); Weidenhamer, 2019 WL 6050264, at *4 (upholding the exhaustion requirement and noting "the general preference that courts take advantage of agency expertise when possible").   After having an opportunity to review all the facts available to them, the BOP could determine that release was warranted; however, in bypassing the process altogether, DeMartino has denied the BOP the opportunity to make this assessment.

There are many challenging factors to consider during this pandemic, and the BOP should have the opportunity to assess those factors during the statutorily-required review period.  For example, notwithstanding the current pandemic, the BOP must carry out its charge to incarcerate sentenced criminals and must consider the effect release of prisoners may have on the safety and health of both the inmate population and the citizenry.  It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care.  And it must consider myriad other factors, including the availability of transportation for inmates (during a period in which interstate transportation services often used by released inmates are providing reduced, if any, service), and of

13

supervision of inmates once released (during a period in which the Probation Department has necessarily cut back on home visits and supervision). Judicial review will be all the more effective if it occurs after the BOP is given an opportunity to assess the interplay of these various concerns for a given defendant.

If the Warden of Allenwood fails to act within 30 days of DeMartino's request, DeMartino may then make a motion before this Court for relief. If, on the other hand, the Warden denies DeMartino's request within 30 days, DeMartino must then exhaust his administrative rights before proceeding before this Court. DeMartino's motion, therefore, is premature and should be denied.

### 2.   The Defendant is a Danger to the Community

The Court need not reach the merits of DeMartino's motion due to his failure to meet the statutory exhaustion requirements. However, if the Court were to consider the defendant's motion further, the Court must consider the danger that the defendant poses to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). The factors that may be considered pursuant to 18 U.S.C. § 3142(g) include "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . ; (2) the weight of the evidence against the person; (3) "the history and characteristics of the person"; and "(4) the nature and seriousness of the danger to any person of the community that would be posed by the person's release".

Here, the crimes for which DeMartino is serving his sentence are undeniably serious and violent. But the analysis does not end at just his most recent offense. DeMartino's extensive violent criminal history along with his membership in the Colombo Family increase exponentially the danger he poses to the community. In his Motion,

14

DeMartino argues that he is not a danger because he is "diminished by age and health complications." Motion at 8. However, one of the underlying actions of the crimes for which he was convicted involved nothing more than pulling the trigger of a firearm. Moreover, the defendant need not be physically fit to fire a weapon or conspire with other criminals to bring violence to others. Indeed, Courts in this district have declined to find that danger was diminished by advanced age where a petitioner was involved in organized crime. See United States v. Velentzas, No. 91-CR-384-1 (DRH), ECF No. 267 (E.D.N.Y. Apr. 3, 2020) (denying compassionate release to an 85-year-old petitioner with medical issues who was involved in organized crime and engaged in extortion, illegal gambling and murder); United States v. Urso, No. 03-CR-1382 (NGG), 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019) (denying compassionate release, in part, because of the danger posed by the 83 year-old-petitioner with medical issues, who was involved in organized crime for over thirty years as an employee and high ranking member of the Bonnano Family of La Cosa Nostra). DeMartino, at the age of 64 years old, is far younger than similarly situated defendants that have been denied compassionate release because of the danger they continue to pose from their involvement with organized crime.

　　　　　Putting DeMartino's connection to organized crime aside, he has shown repeatedly that periods of incarceration do not deter him from committing crimes. Consider the timeline of his criminal history. As outlined above, DeMartino was convicted of Criminal Mischief for crimes related to a June 16, 1983 incident. PSR ¶¶ 54-56. He was sentenced to one year in custody. PSR ¶ 54. He was then involved in a bank robbery on December 9, 1985. PSR ¶¶ 57-60. After being released from prison on January 18, 1991, the defendant was arrested again on December 16, 1991. PSR ¶ 60. While the crime for

which he was convicted pertaining to that arrest was for possessing a firearm, the circumstances under which he was arrested—with two other members of the Colombo Family, all with loaded firearms and one with a "hit list" of members of the Colombo Family designated for execution—show that it was much more serious than mere possession.  PSR ¶¶ 61-64.  Following his release from prison on November 17, 1997, the defendant violated his supervised release by continuing to associate with other members of the Colombo family, a violation for which he served an additional two months' incarceration ending on August 21, 1998.  PSR ¶ 63.  After completing his supervised release on January 27, 2001, the defendant began conspiring to commit murder on March 1, 2001, less than two months later. PSR ¶ 2.

Given the timeline above, DeMartino has proven time and time again that prison does not deter him.  When released from prison, it does not take long for him to associate with other violent criminals and commit violent crimes.  DeMartino has been and continues to be a danger to the community.  That, in and of itself, is grounds for denial of the instant motion.  Valentzas, No. 91-CR-384-1 (DRH), ECF No. 267 at 9.)

3.    The Defendant's Medical Conditions
Do Not Warrant Compassionate Release

The defendant has also failed to meet the heavy burden of establishing that his circumstances offer the kind of "extraordinary and compelling" reasons that justify compassionate release.  The United States Sentencing Guidelines provide the following explanation of "extraordinary and compelling reasons" that may exist due to a defendant's medical condition or age:

(A) Medical Condition of the Defendant.–

16

(i) The defendant is suffering from a terminal illness (i.e., a serious physical and advanced illness with an end of life trajectory) . . .

(ii) The defendant is–

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.– The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13, Application Note 1; see also 28 U.S.C. § 994 (authorizing Sentencing Commission to describe criteria that should be considered extraordinary and compelling reasons for sentence reduction).

Here, although DeMartino claims to suffer from a number of physical ailments associated with the ordinary aging process, he "does not allege that he suffers from a terminal illness," fails to explain how any of these ailments substantially diminish his ability to provide self-care, "[n]or does he does he allege that he is not receiving adequate care for these conditions." United States v. Urso, No. 03-CR-1382 (NGG), 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019) (denying motion for compassionate release). As for his age, as DeMartino concedes, he has not yet attained the age of 65. Even if he were over the age of 65, as he will be in a few months, given the serious nature of the defendant's crime "and his

17

relatively advanced age at the time of conviction" (the defendant was in his forties at the time

of conviction), "[the defendant's] age would not weigh as strongly in favor of compassionate

release as it might in other cases." Urso, 2019 WL 5423431, at *3.

Nevertheless, DeMartino argues that notwithstanding the Guidelines criteria,

"this Court ultimately has independent authority to determine whether DeMartino's age and

health risks during the COVID-19 pandemic are 'extraordinary and compelling reasons'

warranting release under § 3582(c)(1)(A). Motion at 7. Even under such a framework, the

Court should still deny the requested relief.

DeMartino complains of numerous health conditions, including chronic

obstructive pulmonary disease ("COPD") and asthma, that put him at a higher risk for severe

illness from COVID-19. Motion at 2. DeMartino fails to show, however, that continued

incarceration at FCI Allenwood Low exacerbates those concerns. In support of his motion,

DeMartino has included the March 27, 2020 affidavit of Dr. Brie Williams which is not

particularized to DeMartino. Motion, Ex. D. The affidavit offers an opinion regarding the

risks of COVID-19 among the prison population in general. But as the Honorable Roslynn

R. Mauskopf noted in an opinion denying release for a defendant at the Metropolitan

Detention Center ("MDC"), "[Dr. Williams' affidavit does not take] into account the actual

conditions at MDC, or the actual steps that the Federal Bureau of Prisons has taken both

nationally and locally to mitigate the spread of COVID-19 within all of its facilities, and

specifically, within the MDC . . ." United States v. Amador-Rios, No. 18-CR-398 (RRM),

2020 WL 1849687, at *3 (E.D.N.Y. Apr. 12, 2020). "There is nothing to suggest that the

Bureau of Prisons will be unable to mitigate or manage the effects of COVID-19, or will be

unable to handle the medical needs of any inmate at MDC . . ." Id.  The same analysis

applies to DeMartino and FCI Allenwood Low.

Additionally, among the factors considered by the BOP in analyzing and

authorizing release plans is whether the "transfer to home confinement is likely not to

increase the inmate's risk of contracting COVID-19."  Memorandum for the Director of the

Bureau of Prisons from the Attorney General, "Prioritization of Home Confinement as

Appropriate in Response to COVID-19 Pandemic," March 26, 2020 (last visited on April 22,

2020), available at https://www.bop.gov/resources/news/pdfs/20200405_covid-

19_home_confinement.pdf.  In his motion, DeMartino states that if released, he would move

to his home in Queens, New York.  Motion at 9.  New York City has an infection rate that

dwarfs that of the area in Pennsylvania where FCI Allenwood Low is located.[6]  Accordingly,

it is not at all clear that the defendant's proffered location for home confinement is actually

safer than FCI Allenwood Low for someone in the defendant's position, and it may, in fact,

subject him to greater exposure to the virus.  See United States v. Baker, No. 97-CR-877

(DRH), ECF No. 346 (E.D.N.Y. Apr. 21, 2020) (finding that a defendant's request to be

released from a facility in an area of the country with a low incidence of infection to travel to

---

[6]     According to the New York Times interactive website that is tracking COVID-19
infection by state and county, Union County in Pennsylvania—where FCI Allenwood is
located has had—(as of April 22, 2020), 30 confirmed cases of COVID-19 illness., which is
approximately 66 cases per 100,000 people.  According to the same website, New York City
has had 142,442 confirmed cases of COVID-19 illness, which is approximately 1,687 cases
per 100,000 people – an infection rate far greater than that of Union County.  See
Coronavirus Map: Tracking the Spread of the Outbreak, The New York Times at
https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (Apr. 22, 2020)
(updated regularly)).

an area of the country that is presently the epicenter of the COVID-19 pandemic undermines the purported rationale for release).

                  4.      <u>The Section 3553(a) Factors Warrant Against Any Relief</u>

            Any relief issued by the Court must still be analyzed using the factors listed in 18 U.S.C. § 3553(a).  <u>See</u> 18 U.S.C. § 3582(c)(1)(A).  The government has already discussed at length the nature of the crime for which DeMartino was convicted, his violent criminal history and the need to protect the public from him committing further crimes.   In addition, the government notes that DeMartino is scheduled to be released on July 14, 2024.  A more than four-year reduction of his sentence is significant.  It would allow the defendant to escape a large portion of the justified punitive sanction imposed by the district court for his violent criminal behavior.  Moreover, while the defendant has shown that he is not deterred from committing further criminal acts after being incarcerated, his continued confinement serves as deterrence for others who would contemplate such crimes.

<u>CONCLUSION</u>

            For the reasons set forth above, the Court should deny the defendant's motion for modification of his sentence and compassionate release.

                                    Respectfully submitted,

                                    RICHARD P. DONOGHUE
                                    United States Attorney

                  By:        /s/
                                  Oren Gleich
                                  Assistant U.S. Attorney
                                  (631) 715-7889

cc:     Benjamin Yaster (by e-mail and ECF)
         Clerk of Court (by ECF)

20
