

U.S. Department of Justice

United States Attorney
Eastern District of New York

MRM:OG
F. #2003R00452

271 Cadman Plaza East
Brooklyn, New York 11201

February 24, 2022

<u>By ECF</u>

The Honorable Raymond J. Dearie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: United States v. Vincent DeMartino
     <u>Criminal Docket No. 03-285 (RJD)</u>

Dear Judge Dearie:

  The government respectfully submits this letter in response to defendant Vincent DeMartino's January 31, 2022 motion for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A). ECF No. 256 ("Mot." or "the Motion"). For the reasons set forth below, the Court should deny the defendant's motion.

  The procedural history and facts of this case are well known to the Court from the defendant's numerous recent submissions seeking to collaterally attack his conviction and to reduce his sentence. Among these submissions were the defendant's April 15, 2020 motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 222), the government's response (ECF No. 225), the defendant's reply (ECF No. 228) the defendant's supplemental reply (ECF No. 231) and the government's reply (ECF No. 232). The Court denied the defendant's motion on May 26, 2020. <u>See</u> ECF No. 234. Additional submissions included the defendant's motion for reconsideration (ECF No. 241), the government's response to the defendant's motion for reconsideration (ECF No. 245) and the defendant's reply (ECF No. 246). The Court denied the defendant's motion for reconsideration on December 3, 2020. <u>See</u> ECF No. 247. On January 27, 2021, the defendant also submitted a letter alleging that the Bureau of Prisons had failed to provide him with adequate medical care. <u>See</u> ECF No. 252. The Court construed that letter as a "motion for relief" and on February 24, 2021, terminated it as moot following the receipt of a written response from the BOP to the defendant's allegations. (ECF Nos. 253 to 255).

In the Motion, the defendant seeks again now to reduce his sentence because, as he alleges, the new facility to which he was transferred in September 2021—FCI Hazelton in West Virginia—has acted with "knowing indifference to [the defendant's] medical needs." See Motion at 3. Specifically, the defendant alleges that although an ophthalmologist at West Virginia University Hospital informed him that he would need surgery to repair his retinal detachment, he has not yet been seen by an ophthalmologist. Id. In addition, the defendant alleges that "he has not received replacement hearing aids and was only offered a used C-PAP machine that had previously been used by another inmate, without being sterilized and having hair and water particles in its tubing." Id.

Acknowledging that the Court previously denied a reduction in his sentence, the defendant argues that "the denial of basic medical care for [the defendant's] sensory loss and apnea . . . tip the § 3553(a) factors in favor of release and converting his remaining imprisonment to home confinement." Id. at 4. As the government has written extensively in opposition to the defendant's prior requests for compassionate release, see ECF Nos. 225, 232 and 245, the government incorporates those prior submissions and limits this response to address the defendant's most recent allegations.

Attached as Exhibit A to this response, filed under seal, are updated medical records received from FCI Hazelton through February 23, 2022, the date they were received by the government. A cursory review of the voluminous medical records puts to rest any notion that the BOP is indifferent to the defendant's medical needs. On the contrary, these records show that the BOP is actively engaged in treating all of the defendant's medical needs, including the complaints that form the basis of the Motion.

With respect to the defendant's claim that he was given a CPAP machine with "hair and water particles in its tubing", the Health Services Administrator at FCI Hazelton disputes this allegation. Responding to the defendant's request for an administrative remedy regarding the CPAP machine, a supervisory nurse at FCI Hazelton stated that the defendant was offered a "disinfected, fully operational CPAP machine (machine, battery, and connector), with new single-use supplies (tubing, filters, mask, and headgear) on December 30, 2021." See Exhibit A at 169. A clinical encounter administrative note from that date describes that although the defendant was advised that he would be supplied with a CPAP machine with new parts, he stated, "I don't want this, it is used." See id at 6. The defendant thereafter signed a document refusing the use of the CPAP Machine, where he "assume[d] all responsibility for [his] physical and/or mental condition, and release[d] the Bureau of Prisons and its employees from any and all liability for respecting and following [his] expressed wishes and directions." See id. at 182. As described by the supervisory nurse, "the ongoing COVID-19 pandemic created unprecedented shortages of medical equipment, especially respiratory equipment like CPAP machines." Id. Despite placing orders in July 2021 and December 2021 from two different medical equipment companies for new machines, FCI Hazelton has been unable to have those orders fulfilled. Id. Nonetheless, the defendant refused to accept the "disinfected, fully operational CPAP machine" with "new single-use supplies (tubing, filters, mask and headgear)" that FCI Hazelton made available to the defendant. Id. at 169. This CPAP machine would have been appropriate to treat the

2

defendant's medical condition.  Id. at 182.  Under these circumstances, it is baseless to assert that FCI Hazelton was "indifferent" to the defendant's medical needs.  On the contrary, this record proves that the medical staff at FCI Hazelton did the best that they were able to do to care for the defendant under the circumstances.

With respect to the defendant's claim that he has not yet received new hearing aids, a supervisory nurse at FCI Hazelton has responded to the defendant that a consultation with an external audiology provider has been approved and is currently pending scheduling.  See Exhibit A at 174.  "As the consult was deemed routine in nature by the ordering physician, it will be scheduled as outside appointment availability and Institutional safety and security allow."  Id.  Furthermore, the supervisory nurse indicated that the defendant's "condition is appropriately managed locally with the resources available in the community."  Id.  This correspondence shows again that the medical staff at FCI Hazelton is far from "indifferent" to the defendant's medical needs.

Finally, with respect to the defendant's complaint regarding the scheduling of surgery for his eye, a supervisory nurse with FCI Hazelton stated that because the "West Virginia University hospital system unexpectedly stopped doing business with the Federal Bureau of Prisons . . . [his] appointment will be re-scheduled with a new opthalmology provider as soon as outside appointment availability, time, staffing, safety, and security allow."  See Exhibit A at 171.  In addition, it should also be noted that when the defendant initially complained about his vision on November 20, 2021, the medical staff at FCI Hazelton took immediate action to transfer him to an outside hospital for further care.  Id.  At the hospital, the defendant was "evaluated by ophthalmology, who stated there was no need for immediate surgical intervention."  Id. (emphasis added).  As shown by the clinical encounters on February 1, 2022 and February 11, 2022, the medical staff at FCI Hazelton continue to monitor the defendant's condition and consider his opthalmology consultation to be of an "urgent" priority.  Id. at 1-3.

As shown by the defendant's medical records, each of the defendant's specific medical complaints are being addressed by FCI Hazelton.  These records also show that the facility is far from "indifferent" to the defendant's medical needs.  Moreover, as the acting warden explained to the defendant in his November 18, 2021 denial of the defendant's request for compassionate release, the defendant "do[es] not meet the medical criteria of debilitated.  [He does] not suffer from a progressive illness that has affected [his] ability to self-care and [he is] not confined to a bed or chair 50% of waking hours."  See Motion, Exhibit D.  Furthermore, the defendant "do[es] not have a medical condition which substantially limits [his] ability to function in a correctional setting."  Id.  Accordingly, the defendant's medical needs do not provide justification to grant him compassionate release.  Moreover, for the reasons described at length in the government's motion in opposition to

3

the defendant's prior motion for compassionate release, the section 3553(a) factors weigh heavily against granting the defendant the extraordinary relief he is seeking.

        For the reasons stated above, the defendant's Motion should be denied.

Respectfully submitted,

BREON PEACE  
United States Attorney

By:    /s/ Oren Gleich  
Oren Gleich  
Assistant U.S. Attorney  
(631) 715-7889

cc:    Benjamin Yaster, Esq. (by ECF)  
       Clerk of Court (by ECF)