UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
UNITED STATES OF AMERICA,

       - against -                                  **MEMORANDUM AND ORDER**

VINCENT DEMARTINO,                        Case No. 03-cr-285 (RJD)

              Defendant.
---------------------------------------------------------- X

DEARIE, District Judge

      Vincent DeMartino is serving a 25-year sentence this Court imposed in 2005 after he was convicted by a jury for crimes stemming from his role as a would-be assassin in a failed attempt on the life of a fellow soldier in the Colombo crime family. PSR, ECF No. 215, ¶¶ 10-20. Mr. DeMartino, currently housed at FCC Hazelton, is scheduled to be released on September 6, 2024.[1]

      Mr. DeMartino moves the Court pursuant to 18 U.S.C. § 3582(c)(1)(A) for compassionate release. Section 3582(c)(1)(A) authorizes a court to modify a term of imprisonment when (1) extraordinary and compelling reasons warrant a sentence modification and (2) the factors outlined in 18 U.S.C. § 3553(a) support such a modification. United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021).[2] Mr. DeMartino's age, the amount of time he has served in prison, his deteriorating health — in particular, complications with his right eye —, and the Bureau of Prison's cavalier attitude in addressing these conditions, present extraordinary and

---

[1] See Fed. Bureau of Prisons Online Inmate Locator System, https://www.bop.gov/inmateloc/ (last visited May 24, 2022).
[2] The Court notes that a defendant may bring a § 3582 motion only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Mr. DeMartino satisfied this requirement by filing an application with the warden of FCC Hazelton on November 1, 2021, which was denied on November 18, 2021. See ECF No. 256-2; Def. Mot. at 4.

compelling circumstances and warrant a modification of the remainder of Mr. DeMartino's sentence to home confinement.³

## I.  Extraordinary and Compelling Reasons

The Sentencing Commission Guidelines, U.S.S.G. § 1B1.13, provide that extraordinary and compelling circumstances may exist when a defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical health because of the aging process; and (iii) has served at least ten years or 75 percent of his or her term of imprisonment, whichever is less. Mr. DeMartino, who is 66 years old with just over two years remaining on his 25-year sentence, meets the first and third of these criteria without question. Courts have interpreted the second criteria of § 1B1.13 to apply to senior-citizen defendants whose "physical and cognitive deterioration has impaired basic human functions without regard to whether their conditions, other than aging, are terminal." United States v. Ebbers, 432 F. Supp. 3d 421, 429 (S.D.N.Y. 2020); see also United States v. Greene, 516 F. Supp. 3d 1, 23 (D.D.C. 2021) (Brown-Jackson, J.) ("[S]ection 1B1.13 permits a fact-specific, flexible analysis of potentially extraordinary and compelling reasons for release that turns on the defendant's age and the particular conditions and circumstances presented by his physical and mental health. And for defendants who meet the threshold age requirement, medical conditions that 'impair[]' a defendant's 'basic human functions' plainly suffice.")

Mr. DeMartino faces a litany of documented medical issues including high blood pressure, high cholesterol, asthma, chronic obstructive pulmonary disease, cardiac arrythmia, obesity, and knee problems. Def. Mot. at 1-2. Clinical notes describe DeMartino as suffering

---

³ This is Mr. DeMartino's second § 3582 motion. The first, based on the risks posed by the COVID-19 pandemic, was denied because Mr. DeMartino failed to establish that he was at a high risk of contracting COVID-19. See ECF No. 234 at 2.

from "chronic medical problems." ECF No. 257-1 at 45. Particularly concerning is Mr. DeMartino's high blood pressure, which puts him in "hypertensive crisis" and at severe risk of stroke. ECF No. 274-1 ¶ 4. Notably, none of these conditions is referenced in the physical condition section of his 2004 presentence report, suggesting that they have arisen or been exacerbated during the almost twenty years he has spent in prison. See PSR ¶¶ 87-90.

But the gravest threat to Mr. DeMartino's basic human functioning is his numerous ophthalmologic issues, which are caused by an alarming conglomeration of conditions, including an epiretinal membrane in the right eye, a history of retinal detachments, vitreous floaters, a vitreous hemorrhage, cataracts, dry eye, floppy eyelid syndrome, and ischemic optic neuropathy. See ECF No. 258-1 at 18, 49, 59, 113. Mr. DeMartino submits that he is essentially blind in his right eye. His vision in that eye is 20/400, rendering him legally blind and able to see at a twenty-foot distance what others normally see at 400 feet. Def. Mot. at 2. Since November 2021, he has twice been sent to the emergency room for vision loss. Id. at 2-3; ECF No. 264 at 1. At various times since November 2021, he has experienced sharp pain, bleeding, and swelling in his right eye. See ECF No. 258-1 at 1 (BOP notes from a February 2, 2022 clinical visit stating Mr. DeMartino suffered vision "gray outs" and had a retinal hemorrhage, "but there was too much swelling and blood to treat it"); id. at 12 (notes from a November 20, 2021 clinical visit stating DeMartino experienced an inability to see in his right eye, blurriness in left eye, and sharp pain). An ophthalmologist who evaluated Mr. DeMartino on March 30, 2022 determined that he faces "symptomatic vision loss" and requires pars plana vitrectomy, a surgical procedure that can restore vision in patients suffering from vitreoretinal diseases. ECF No. 268-1 at 1. Another ophthalmologist, in a declaration submitted in support of Mr. DeMartino's motion, concluded that Mr. DeMartino's vision loss "is a chronic, progressive process . . . and is worsening over

3

time." ECF No. 274-1 ¶ 7. In short, there is no question that Mr. DeMartino's basic human functioning is greatly impaired; his ability to see is in substantial jeopardy.

Mr. DeMartino's circumstances are made all the more extraordinary and compelling by the BOP's lack of responsiveness and candor with respect to his medical conditions. The BOP has long been on notice that Mr. DeMartino's ocular conditions need careful monitoring: his 2004 Presentence Report determined that he "need[ed] to be seen by an ophthalmologist at least once per month." PSR ¶ 87. I reiterated this need just last year, when I issued an Order noting an expectation that "Mr. DeMartino [would] continue to receive prompt and adequate vision care while in BOP custody" because, at the time, Mr. DeMartino had "finally [been] able to see the [vision] specialist whose consult he had been seeking for some time." ECF No. 255 at 1.

Despite this notice, the record reflects a consistent pattern on the part of the BOP of downplaying Mr. DeMartino's conditions and delaying treatment. Despite the severity of his ocular conditions, it has been a herculean task for Mr. DeMartino to see an ophthalmologist. In a series of messages from Mr. DeMartino to FCC Hazelton staff beginning on October 21, 2021 and continuing through December 29, 2021, he requested, with increasing desperation, help with right eye blindness and confirmation of a follow-up operation that was previously directed by a doctor. See ECF No. 256-1. He was not seen by an ophthalmologist until March 7, 2022 when he was taken to the emergency room and ophthalmology was consulted. ECF No. 261. Until the Court addressed the issue at a May 4th conference, the only prearranged ophthalmology appointment that occurred during the more than six months of Mr. DeMartino's vision crisis was on March 30, 2022. After the Court advised at the May 4th conference that Mr. DeMartino's retinal issues appeared to require "immediate appropriate care," the government informed the Court that Mr. DeMartino was scheduled to have an appointment with an outside

ophthalmologist on May 16, 2022. 5/4/2022 Tr. at 6:3; ECF No. 273. This appointment did not occur for an "unknown reason." Email from Oren Gleich, AUSA, to Court (May 24, 2022 4:16 EST). At the eleventh hour, the Court was informed that the appointment eventually did go forward, albeit nine days after it was scheduled.

    Further troubling is the BOP's inability to provide straightforward answers about Mr. DeMartino's prognosis. After Mr. DeMartino's March 30 ophthalmology appointment, the FCC Hazelton Health Administrator reported that the "retina specialist does not need to see the defendant again unless he is having further complications." ECF. No. 266. This proved to be misleading, as the Health Administrator's note omitted reference to the ophthalmologist's recommendation that Mr. DeMartino undergo pars plana vitrectomy surgery. See ECF No. 268-1 at 1. The Court subsequently directed the government and BOP to provide further clarification about the need for surgery and expressed a wish to hear from the ophthalmologist who recommended surgery. 5/4/2022 Tr. at 7:11-17, 15:6-20. The government responded with a memorandum from an optometrist — not an ophthalmologist — opining that surgery would not improve Mr. DeMartino's vision. ECF No. 269-1. In the next paragraph, however, he explained that "[a]s an optometrist," he is not positioned to "directly determine the need, or lack thereof, for surgery" and would need to "defer questioning related to a need for surgery and/or the urgency of surgery to an ophthalmologic surgeon" — all while failing to acknowledge that an ophthalmologic specialist *did* recommend surgery at Mr. DeMartino's March 30 appointment. Id. The government also provided the thoughts of FCC Hazelton's Clinical Director — also not an ophthalmologist — who simply recited the notes from Mr. DeMartino's March 7, 2022 emergency visit and the conclusion that "'no urgent surgical ophthalmic intervention [was]

necessary.'" ECF No. 271-2 at 2. Again, this submission did not address the ophthalmologist's conclusion on March 30th that surgery was necessary.

All told, this record leaves the Court with the impression that the BOP has undertaken the bare minimum of care for Mr. DeMartino, limiting its efforts to ensuring that he does not require emergency surgery, but minimizing the fact that his vision is failing and refusing to implement any meaningful plan to monitor or treat the conditions in the longer term. The "government [has an] obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs." Estelle v. Gamble, 429 U.S. 97 (1976). The Court is not convinced that this duty is being upheld with respect to Mr. DeMartino and is confident he will be able to access a superior standard of care while serving the remainder of his sentence in home confinement.

## II. Section § 3553(a) Sentencing Considerations

The applicable section 3553(a) factors largely overlap with the circumstances already discussed as extraordinary and compelling. In light of Mr. DeMartino's advanced age, poor health, and time served, the 3553(a) factors relating to deterrence, protection of the public, and the seriousness of his crimes of conviction are substantially different today than they were in 2004. There is no doubt as to the seriousness of the crimes Mr. DeMartino committed. But he has paid a heavy penalty for those acts: nearly twenty years of his life. Continued incarceration is not needed to provide just punishment for the terrible crimes he committed decades ago. Although his disciplinary record is not without blemish, none of the recent incidents suggest to the Court that Mr. DeMartino will pose a threat to the public. No aspects of the § 3553(a) factors outweigh the Court's finding that DeMartino's age, time served, and declining health qualify him for a sentence modification.

## CONCLUSION

The BOP is not a common jailor. Theirs is a far more challenging and vital responsibility. Human beings are entrusted to their care for decades on end. There is no excuse for inaction or dissembling and, in this Court's view, no alternative to immediate release. For the foregoing reasons, Mr. DeMartino's motion for compassionate release is granted. He will serve the remainder of his sentence, through September 6, 2024, in home confinement.

SO ORDERED

Dated: Brooklyn, New York  
      May 26, 2022

/s/ Raymond J. Dearie  
RAYMOND J. DEARIE  
United States District Judge